UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
IN RE WORLDCOM, INC.,                   :
                                        :
----------------------------------------X
                                        :    07 Civ. 3408 (DLC)
JUDITH WHITTAKER,                       :
                          Appellant,    :    OPINION AND ORDER
                                        :
              -v-                       :
                                        :
MCI, LLC,                               :
                          Appellee.     :
                                        :
----------------------------------------X


Appearances:

For Appellant:
Daniel S. Lubell
Jeffrey S. Margolin
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004

For Appellee:
Marcia Landweber Goldstein
Lori R. Fife
Alfredo R. Pérez
Adam P. Strochak
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153-0119


DENISE COTE, District Judge:

        This appeal arises from the bankruptcy of WorldCom, Inc.

("WorldCom"), and concerns the ownership of funds held in trust

for appellant Judith Whittaker, who served as a member of the

board of directors of MCI Communications Corporation ("MCI")

until MCI merged with WorldCom in 1998.  During her tenure on
the board of directors, Whittaker deferred her compensation
through a plan established by MCI and administered by the Putnam
Fiduciary Trust Company ("Putnam").  When WorldCom filed for
bankruptcy in 2002, it directed Putnam to freeze the trust
assets.  Whittaker subsequently sought distribution of the trust
assets, and the reorganized debtors that emerged from the
WorldCom bankruptcy objected.  She appeals from the judgment of
the bankruptcy court (Gonzalez, B.J.) finding that her claim was
general and unsecured, and from that court's grant of the
reorganized debtors' objection to payment of that claim.  For
the following reasons, the decision of the bankruptcy court is
affirmed.

BACKGROUND

I.    The Putnam Plan and WorldCom Bankruptcy

     The facts recited here are taken from the parties' fact
stipulation.  Whittaker served as a member of MCI's board of
directors from 1985 until its merger with WorldCom in 1998.  In
1994, Whittaker initiated participation in the MCI
Communications Corporation Board of Directors Deferred
Compensation Plan (the "Plan"), through which she elected to
defer 100% of her retainer and 100% of her meeting fees, to be
paid in ten annual installments commencing no later than
February 15, 2003.  MCI established a trust with Putnam to

administer the Plan, and "transferred funds to Putnam corresponding to the compensation Whittaker had elected to defer, which MCI asserts were deposited into the trust and Whittaker asserts were deposited into her account."  When MCI and WorldCom merged in 1998, the board of directors was reconstituted and the Plan was closed to new participants. Existing participants, including Whittaker, continued to accrue benefits under the Plan.

On November 13, 2001, Whittaker called Putnam representative Deborah Hutchins with an inquiry regarding her Plan account.  Hutchins in turn contacted David Blackman, a senior manager at WorldCom charged with day-to-day oversight of the Plan, and asked for directions in response to Whittaker's inquiry.  Hutchins responded to Whittaker by email dated November 20, 2001 (the "Putnam Email"), cc'ing Raymond Helms, a senior manager at WorldCom with certain accounting responsibilities for the Plan.  Hutchins wrote that she had followed up on Whittaker's inquiry concerning "removing the funds from this account."  Because MCI stopped making contributions to the Plan, Hutchins wrote, "there is no longer a formal plan in place" and the trust established for Whittaker was "viewed as simply an account with Putnam."  "What this means," Hutchins continued, "is that the funds in the current account are available to you whenever you choose to take them."

The "waiting period" -- i.e., the time until February 15, 2003, before which installment payments to Whittaker were scheduled to commence -- "no longer exists," Hutchins wrote.  Hutchins further instructed Whittaker that, "[i]n order to close out your account, and receive a check, we will need a letter of instruction from you."

Between November 20, 2001, the date of the Putnam Email, and July 21, 2002, the date of WorldCom's bankruptcy filing, Whittaker did not request that either Putnam or MCI close her account or make a distribution from it.  Nor during that time did Whittaker receive any tax form reporting her Putnam account as income to any state or federal taxing agency, nor did Whittaker herself declare the value of her account as income. Further, Whittaker alleges that during that time period she did not regularly receive quarterly statements regarding her Putnam account.  She received at least one such statement, however, which indicated that the "Vested Percent" of her account was "100%."  As of June 30, 2002, the balance in Whittaker's account was $345,183.

Whittaker did not receive notice when WorldCom filed its bankruptcy petition in July 2002.  In November 2002, Whittaker contacted Deborah Hutchins again and asked about cashing out her Putnam account.  Hutchins informed Whittaker that her account had been frozen at WorldCom's instruction.  Whittaker filed a

proof of claim in the United States Bankruptcy Court for the Southern District of New York, which the court received on December 9, 2002.

II.  Procedural History of Whittaker's Action

The bankruptcy court approved the WorldCom debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code on October 21, 2003, and the plan became effective on April 20, 2004.[1]  On September 19, 2003, the debtors filed a Notice of Rejection of Executory Contracts, which purported to reject the Plan.  Whittaker interposed an objection to the Notice of Rejection on January 23, 2004, claiming that the Plan was no longer an executory contract as to her because her interest in it had fully vested.

The debtors filed their objection to Whittaker's claim on September 2, 2004, arguing that her claim was "no more than a general unsecured claim and is not entitled to priority or secured treatment."  The parties subsequently agreed to a stipulation providing that Whittaker's claim would be allowed as a general unsecured claim.  A hearing was held before the bankruptcy court on June 20, 2006, and the court issued its

---

[1]    The reorganized debtors, renamed MCI, Inc., merged with Verizon Communications, Inc., on January 6, 2006.  The resulting entity, MCI LLC, now does business as Verizon Business Global LLC.

opinion on March 27, 2007,[2] holding that Whittaker's claim was general and unsecured, and that the debtors' objection to the claim was granted.

The bankruptcy court denominated the trust at issue a "rabbi trust," which is "an irrevocable trust for deferred compensation. Funds held by the trust are out of reach of the employer, but are subject to the claims of the employer's creditors in the event of bankruptcy or insolvency." In re ITT Group, Inc., 448 F.3d 661, 665 (3d Cir. 2006) (quoting David J. Cartano, Taxation of Compensation & Benefits § 20.05[D][3], at 735 (2004)). Under a rabbi trust, "the recipient receives only the company's unsecured promise to pay benefits and has no rights against any assets other than the rights of a general unsecured creditor of the company." 6 Mertens Law of Fed. Income Tax'n § 25B:212 (2007); see also Westport Bank & Trust Co. v. Geraghty, 90 F.3d 661, 664 (2d Cir. 1996) (explaining that the assets of the rabbi trust at issue were "subject to the claims of [the employer's] creditors at all times"). No income is imputed to the beneficiary of the trust so long as the trust assets remain subject to "substantial limitations or restrictions." I.R.S. Priv. Ltr. Rul. 81-13-107 (Dec. 31, 1980).

---

[2]    The opinion was subsequently amended, on April 3, 2007, to reflect accurately the attorneys who appeared for the parties.

While Whittaker does not contest the description of the trust that held her assets as a rabbi trust, she claims that her rights in the trust assets vested on November 20, 2001 because the Putnam Email accelerated payment of her "fully funded and 100% vested deferred compensation plan account at least eight months prior to the Debtors' bankruptcy filings." Accordingly, the bankruptcy court observed that "Whittaker's assertion of an ownership interest in the corpus of the Trust rests, as it must, on the purported or imputed effects of the Putnam Email."

Whittaker first argued before the bankruptcy court that the Putnam Email removed any "substantial limitations or restrictions" on her access to the trust assets by informing her that "the funds in the current account are available to you whenever you choose to take them," and thus effectively distributed them. The bankruptcy court construed this argument as comprising two distinct assertions: first, that the email effected a "constructive distribution" of the trust assets, and, second, that the email effected a distribution in fact. The court rejected both arguments.

First, the bankruptcy court found that constructive distribution and its corollary, constructive receipt, were tax doctrines inapplicable to the facts of this case. The court explained that constructive receipt is a doctrine by which certain income is imputed to the taxpayer "to prevent the

exclusion from taxable income of items the actual receipt of which, at the taxpayer's option, can be deferred or postponed indefinitely." Rossi v. Comm'r, T.C.M. (P-H) P 50,217 (1950). Whittaker argued that it was "enough that MCI removed the restrictions to Whittaker's receipt of her own account funds and made them available to her at any time so as to have made a constructive distribution under the tax code and conveyed to Whittaker ownership of the funds." But the bankruptcy court rejected as "simply incorrect as a matter of law and as a matter of logic" this suggestion that "constructive receipt for tax purposes necessarily presupposes or results in actual ownership or possession for the purposes of state property law," which, the court seemed to suggest, would govern Whittaker's claim of entitlement to the trust assets. "Simply," the bankruptcy court concluded, "constructive receipt for tax purposes does not transmute a claim into actual possession. . . . [W]hether or not the Debtors removed the 'substantial limitations' to Whittaker's ability to receive funds from the Trust, such fact alone is insufficient to establish that the Trust Assets were distributed to Whittaker."

As to the second component of Whittaker's argument -- that the assets were distributed in fact -- the bankruptcy court found that the factual record was entirely bereft of any evidence supporting such a claim. The court noted that a

distribution in fact might have occurred "[i]f the Trust Assets had been transferred out of the Trust to either a general Putnam account or an account specifically created for and belonging to either a general Putnam account or an account specifically created for and belonging to Whittaker." But the court found that Whittaker had neither "identified any documents recording such a transfer, even if only from one Putnam account to another," nor did she show "that the Trust was closed, nor that the Trust's records were altered to reflect a change in ownership." Further, the bankruptcy court observed that because the Plan requires all distributions from the trust to "be made in cash only," Deferred Compensation Plan § 6.03, any transfer between accounts or designation of Whittaker as the owner, rather than the beneficiary, of the trust assets, would likely have been invalid. Accordingly, the bankruptcy court rejected Whittaker's argument that the Putnam Email distributed the trust assets either constructively or in fact.

Second, the bankruptcy court rejected Whittaker's alternative argument that the debtors should be equitably estopped from denying that she was the owner of the trust assets because, regardless of whether the Putnam Email distributed the trust assets (constructively or in fact), it represented to Whittaker that the assets were hers and she reasonably relied on this representation to her detriment. Observing that equitable

9

estoppel is available where "1) the party to be estopped makes a
misrepresentation of fact to the other party with reason to
believe the other party will rely upon it; 2) and the other
party reasonably relies on it; 3) to her detriment," Kosakow v.
New Rochelle Radiology Assoc., 274 F.3d 706, 725 (2d Cir. 2001),
the bankruptcy court found that Whittaker had not satisfied
either of the first two prongs of the test.

With respect to the first prong of the equitable estoppel
analysis, the bankruptcy court found that Whittaker did not
identify any misrepresentations of fact in the Putnam Email.
Whittaker alleged that certain statements contained in the email
could only have been true if she had been vested with ownership
of the trust assets when any substantial limitations on her
authority to withdraw them were eliminated.  The bankruptcy
court rejected this argument on the same ground as it had
rejected Whittaker's distribution-in-fact argument, namely that
the removal of substantial limitations on her access to the
trust assets, without more, was insufficient to effect a
distribution of the assets.  The court wrote that the email

> was only a definite misrepresentation of fact in the
> context of Whittaker's claim if the Putnam Email
> stated or represented that the Trust Assets had been
> distributed or Whittaker had otherwise gained
> ownership of the Trust Assets.  As Whittaker
> mistakenly believes merely establishing that the
> Putnam Email represented that the substantial
> limitations to withdrawal had been eliminated
> demonstrates that ownership of the Trust Assets was

transferred, she fails to otherwise identify how the Putnam Email <u>directly</u> represented that she owned the Trust Assets.

The bankruptcy court further found that Whittaker had not relied on the email and that any alleged reliance would have been unreasonable.  According to the bankruptcy court, Whittaker did not identify "any affirmative action she took in reliance upon the Putnam Email."  Of particular note, Whittaker failed to declare the trust assets as income on her 2002 federal income tax return, suggesting to the court that "Whittaker did not believe she owned the Trust assets and therefore did not rely on the Putnam Email."  The bankruptcy court went even further, finding that any reliance on the Putnam Email would have been unreasonable, particularly in light of Whittaker's service on the MCI board of directors and its compensation committee, as well as her career as a corporate attorney and general counsel of a large corporation.  The court ruled that Whittaker knew or should have known that "the ability to defer income taxes on that income deferred under the Deferred Compensation Plan was dependent on MCI retaining ownership of the deferred income."  Moreover, the court opined that Whittaker knew or should have known that the Putnam Email could not have served to alter or terminate the trust relationship, which had been formalized by the parties and contained "rules and regulations defining the parties' respective obligations, rights, and interests."

11

Finally, the bankruptcy court found that the lack of subsequent confirmatory communication between MCI and Whittaker "put Whittaker on notice that, whatever her personal beliefs regarding the Trust Assets, those beliefs were not shared by Putnam and MCI."  The bankruptcy court opined that this understanding should have been confirmed by boilerplate language included in the quarterly account statement Whittaker received from Putnam following its email, which informed her that "[t]he funds in this account belong to your company," and that the account values recited in the report represented only an "unsecured promise . . . to pay benefits under the company's non-qualified plan."

Finally, the bankruptcy court rejected Whittaker's argument that the funds derived from the Plan were "retiree benefits" within the meaning of section 1114(a) of the Bankruptcy Code, and therefore should have been paid in a timely fashion. Section 1114(a) defines "retiree benefits" as

> Payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and defendants, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

11 U.S.C. § 1114(a).  The bankruptcy court read the language of
the statute literally to exclude deferred compensation plans,
whose purpose is not to provide retirement benefits, but rather
"to defer income, and the requisite income taxes, until some
later date."  The court therefore declined to endorse
Whittaker's argument that the trust assets "could be used as a
retirement vehicle . . . for purposes of retirement," and thus
fell within the meaning of the statute.

     In light of the foregoing findings, the bankruptcy court
found that Whittaker's claim was general and unsecured, and that
the debtors' objection to payment was granted.  Whittaker
appeals from that judgment, arguing principally that the
district court erred in finding that there was neither a
distribution nor a transfer of trust funds, and by declining to
equitably estop the debtors from confiscating the assets in her
trust account.  She further argues that her Putnam account
passed through the bankruptcy, and that the solvent reorganized
debtors should be responsible for resuming payment of the debt
owed her.

DISCUSSION

     A district court "may affirm, modify, or reverse a
bankruptcy judge's judgment, order, or decree." Fed. R. Bankr.
P. 8013.  On appeal, the legal conclusions of the bankruptcy
court are reviewed de novo, but the findings of fact are

reversed only when they are "clearly erroneous." Kuhl v. United States, 467 F.3d 145, 147 (2d Cir. 2006) (citation omitted) (per curiam); In re Worldcom, Inc., 339 B.R. 836, 840 (S.D.N.Y. 2006).

I.    Distribution of Trust Assets

Whittaker frames her primary argument on appeal thusly:

> The dispute in this case is whether, having accelerated payment of Whittaker's Plan benefits by making the funds in Whittaker's fully-funded Deferred Compensation Plan account immediately available to her without restriction and having set apart her account as 'simply an account with Putnam' eight months prior to MCI's bankruptcy filing, MCI had distributed such funds so as to make them Whittaker's property.

The bankruptcy court rejected Whittaker's argument that she had constructively received the trust assets by virtue of the Putnam Email on the ground that the constructive receipt doctrine applies only in tax law, and thus did not support Whittaker's claim that she was in possession of, or exercising dominion over, the trust assets.  On appeal, Whittaker contends that the doctrine is not so limited, and that it serves here to furnish her a "right of unqualified control" under New York property law.  She further argues that the bankruptcy court ignored her equitable interest in the trust assets, which she contends transmuted those assets into her own property.  Finally, she contends that there was sufficient evidence in the record before

the bankruptcy court to show that the trust assets were
distributed in fact.

Considering Whittaker's second argument first, it is
evident that the bankruptcy court did not err in finding that no
distribution in fact took place.  As this determination was one
of fact, this Court reviews it for clear error.  Kuhl, 467 F.3d
at 147.  Before the bankruptcy court, Whittaker marshaled
insufficiently persuasive evidence to prove that a distribution
of the trust assets had been made to her.  She relied primarily
on the Putnam Email's assertion that her account was "simply an
account at Putnam," and argued that such a statement indicated a
distribution had been effectuated.  She produced no records
reflecting any changes to her Putnam account, and indeed
Whittaker received an account statement following the Putnam
Email which remonstrated that the funds in her account "belong
to your company" and that "the existence of the account does not
give you . . . any ownership rights to these or any other assets
of the company."  In the judgment of the bankruptcy court, the
Putnam Email alone was insufficient to transform the assets in
question from a trust held by MCI and Putnam in Whittaker's name
into Whittaker's own property.

Moreover, contrary to Whittaker's suggestion, the
bankruptcy court did not require evidence that a transfer of the
trust assets had been made, or that there was some change in the

trust records reflecting a shift in ownership.  Rather, the
bankruptcy court used these hypothetical changes -- not evident
in the instant case -- as potential indicia that a distribution
of the trust assets had been made.  Finding no such indicia, or
any other evidence that a distribution had taken place, the
bankruptcy court properly determined that the assets remained
the property of MCI and Putnam and therefore subject to the
claims of MCI's creditors.

Whittaker further argues that MCI's failure to provide the
bankruptcy court with documentation showing that a distribution
had not taken place should give rise to an inference that the
company's business records "were consistent with [the]
instructions in the Putnam Email."  The Second Circuit affords
parties such an inference only when the evidence in question
existed at one time and was then destroyed.  See Kronisch v.
United States, 150 F.3d 112, 126 (2d Cir. 1998).  Because
Whittaker has not shown (or even alleged) that the evidence was
destroyed, she is not entitled to the adverse inference she
seeks.

Moving on to Whittaker's constructive distribution
argument, there was no error in the bankruptcy court's
determination that, "whether or not the Debtors removed the
'substantial limitations' to Whittaker's ability to receive
funds from the Trust, such fact alone is insufficient to

establish that the Trust Assets were distributed to Whittaker."
The IRS private letter ruling that originated the rabbi trust
stated that the beneficiary of such a trust must report as
constructively received income any contribution to, or any
earnings from the trust, unless his or her right to receive the
money was "subject to substantial limitations or restrictions."
I.R.S. Priv. Ltr. Rul. 81-13-107 (Dec. 31, 1980).  Whittaker
attempts to turn this ruling on its head by arguing that the
Putnam Email removed any substantial limitations or restrictions
on her access to the trust assets, and therefore effected a
constructive distribution of those assets.  But there is nothing
in the private letter ruling or the caselaw interpreting it to
support Whittaker's argument, and the bankruptcy court properly
rejected it.  The constructive receipt doctrine applies only to
the calculation of income for a given year, and has nothing to
do with the law governing Whittaker's ownership of the trust
assets at the time of the debtor's bankruptcy.  Indeed, the
constructive receipt doctrine explicitly countenances a
situation in which the trust assets are in the possession, or
under the guardianship, of someone or some entity other than the
employee seeking to access them.  Otherwise, there would be no
reason for the doctrine to query whether the employee's access
to the assets was subject to any substantial limitations or
restrictions.  Without more, the Putnam Email's alleged removal

of any limitations or restrictions on Whittaker's access to the accumulated benefits in the Plan cannot have effectuated a distribution of those assets.

Whittaker's subsidiary arguments concerning property law and her equitable interest in the trust are equally unavailing. First, she contends that a "right of unqualified control over funds" is the "touchstone for determining ownership and possession for purposes of state property law and under the Bankruptcy Code."  But the cases Whittaker cites to support this argument generally require that the party claiming ownership of the trust produce some evidence of "control or dominion" over it.  Whittaker has not produced such evidence.  Indeed, the record indicates that she never demanded payment of the trust by sending a notarized letter, as the Putnam Email suggested, and that she did not pay income tax on the trust funds, as would be required of the distributee of a deferred compensation plan. The case law Whittaker cites simply fails to support her argument that an "employee's right of unqualified control" over the funds in a deferred compensation plan or a rabbi trust constitutes ownership of those funds.

Likewise, Whittaker's argument that she retained an equitable interest in the trust, and therefore that the trust should be considered her property, is unavailing as she points to no caselaw suggesting that an employee has an equitable

18

interest in a deferred compensation plan or rabbi trust, which
are designed specifically to provide tax benefits to an employee
by imputing ownership of the trust assets to the employer until
a distribution has been made.  Moreover, the language of the
Plan itself makes clear that Whittaker had no interest other
than that of a general, unsecured creditor with respect to MCI
until a distribution of the trust assets was actually made.  As
discussed above, no such distribution was made, and thus the
bankruptcy court correctly determined that Whittaker was a
general, unsecured creditor of MCI.

## II.  Equitable Estoppel

     Whittaker argues that the bankruptcy court erred in
declining to equitably estop MCI from claiming that the Putnam
Email did not effectuate a distribution of the trust assets, and
further claims that this Court must review the bankruptcy
court's decision whether to apply equitable estoppel de novo.
As with all questions of law, review of the bankruptcy court's
application of governing law is de novo, but because the
question whether equitable estoppel applies in a given case is
ultimately one of fact, Bennett v. United States Lines, Inc., 64
F.3d 62, 65 (2d Cir. 1995), the factual determinations
underlying the bankruptcy court's equitable estoppel decision
are reviewed for clear error.  The bankruptcy court correctly
observed that, under federal law, a party may be estopped from

pursuing a defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment. Kosakow, 274 F.3d at 725.

The bankruptcy court found as an initial matter that Whittaker failed to "identify how the Putnam Email directly represented that she owned the Trust Assets." On appeal, Whittaker contends that this finding was in error because, "in the context of the Email's response to her 'cash out' request, the Email's several references to 'your account' and Whittaker's unqualified dominion and control over same may only be fairly interpreted as a representation that Whittaker owned the funds in her account." As the bankruptcy court correctly noted, Whittaker's understanding of the Putnam Email's meaning rests on an erroneous application of the constructive receipt doctrine. As discussed above, whatever the Putnam Email may have meant, and whatever unfettered access to the trust assets it may have granted Whittaker, it did not vest her with the creditor's rights against MCI that she now seeks to vindicate. The bankruptcy court thus did not err in finding that there was no misrepresentation of fact in the Putnam Email.

Nor did the bankruptcy court err in finding that Whittaker had not relied on the Putnam Email. Whittaker testified that

the only affirmative action she took with respect to her account
following the Putnam Email was to contact Deborah Hutchins at
Putnam in November 2002, following MCI's bankruptcy filing, to
inquire where she should send the "letter of instruction"
mentioned in the Putnam Email to claim the trust funds.  The
bankruptcy court weighed this testimony against Whittaker's
failure to withdraw the trust assets in the year following the
Putnam Email and her failure to report the alleged trust
distribution as income on her tax returns, and made a factual
determination that Whittaker had not relied in any way on the
Putnam Email.  The court deemed "implausible" Whittaker's
testimony that she didn't report the income on her tax returns
because she "honestly did not think of it."  This factual
finding is "plausible in light of the record viewed in its
entirety," Anderson v. City of Bessemer City, 470 U.S. 564, 574
(1985), and is therefore not clearly erroneous.  This is
particularly so because the bankruptcy court's determination
rests at least in part on its assessment of Whittaker's
credibility, and because "due regard shall be given to the
opportunity of the bankruptcy court to judge the credibility of
the witnesses."  Fed. R. Bankr. P. 8013.  Because there was no
clear error in the bankruptcy court's factual finding concerning
Whittaker's reliance, it will not be overturned.  As it is
evident that Whittaker did not rely on the Putnam Email, this

21

Court need not consider whether any such alleged reliance would have been reasonable.

III. <u>Whether Whittaker's Putnam Account Passed Through the Bankruptcy</u>

Finally, Whittaker argues that Verizon, the defendant in the instant action and the successor in interest to MCI under the Plan, should have resumed payment of benefits to Whittaker because Verizon is now solvent.  She observes that the bankruptcy court found that the debtors "are not rejecting . . . the Deferred Compensation Plan," and that contracts that are neither assumed nor rejected are deemed to "pass through" the bankruptcy unaffected by the filing.  <u>See In re Texaco Inc.</u>, 254 B.R. 536, 557 (Bankr. S.D.N.Y. 2000).

Whittaker has waived this argument by failing to raise it adequately in the bankruptcy court.  In her Pre-Hearing Memorandum to the bankruptcy court, Whittaker briefly noted that the Plan "itself provides for the resumption of benefits when the Company is no longer insolvent."  She further averred that "[t]he Debtors have emerged from bankruptcy, are no longer insolvent, and do not need to confiscate Ms. Whittaker's retirement benefits to fund their plan obligations."  These statements, however, were made in the context of an argument that the Plan provided "retiree benefits" within the meaning of 11 U.S.C. § 1114 -- an argument the bankruptcy court rejected

and which Whittaker does not now appeal.  In her submissions to
the bankruptcy court, Whittaker nowhere mentions the legal
question of whether her Putnam trust account "passed through"
the bankruptcy and is therefore an obligation of the allegedly
solvent reorganized debtors.  The failure to present this
argument deprived the bankruptcy court of the opportunity to
address it in the first instance.  As a "general rule . . . a
federal appellate court does not consider an issue not passed
upon below," Singleton v. Wulff, 428 U.S. 106, 120 (1976), and
such a court will only make exceptions where we find that
"manifest injustice" will result from its failure to do so,
Robinson v. Gov't of Malaysia, 269 F.3d 133, 147 (2d Cir. 2001).
No such manifest injustice will result here, as Whittaker had
ample opportunity to present her claims in their various forms.

CONCLUSION

     The decision of the bankruptcy court is affirmed.  The
Clerk of Court shall close the case.

SO ORDERED:

Dated:    New York, New York
          September 14, 2007

                                    _____
                                         DENISE COTE
                              United States District Judge